Case 3:23-cv-00405   Document 117   Filed on 07/29/25 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas

**ENTERED**
July 29, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| DULCICH, INC., § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 3:23-cv-00405 |
| § | |
| KOLT DAPRON, *et al.*, § | |
| § | |
| Defendants. § | |

## AMENDED MEMORANDUM AND RECOMMENDATION[1]

There are two summary judgment motions pending before me in this trade secret misappropriation case. The first was filed by Defendant Kolt DaPron. Dkt. 61 (sealed); Dkt. 108 (redacted). The second was filed by Plaintiff Dulcich, Inc. d/b/a Pacific Seafood ("Pacific"). Dkt. 80 (sealed); Dkt. 106 (redacted). Having reviewed the briefing, the record, and the applicable law, I find that there are genuine disputes of material fact as to every claim that preclude granting either party's motion for summary judgment.

## BACKGROUND

Pacific distributes seafood products. In 2011, Pacific formed a subsidiary company, Galveston Shrimp Company, LLC ("GSC"). On June 11, 2020, DaPron

---

[1] On June 2, 2025, I recommended this court grant summary judgment *sua sponte* in Defendant's favor on Plaintiff's state-law tort claims based on preemption under the Texas Uniform Trade Secrets Act ("TUTSA"). While I have been unable to locate any authority addressing whether TUTSA preemption can be raised by the court *sua sponte*, the Texas Supreme Court has said that where "preemptive effect would result only in a change of the applicable law, preemption is an affirmative defense which must be set forth in the defendant's answer or it is waived." *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991). This contrasts with a situation where a statute's "preemptive effect deprives the trial court of subject-matter jurisdiction." *Id.* Because DaPron did not plead or move for summary judgment on the basis of TUTSA preemption, and because TUTSA preemption does not affect this court's jurisdiction, I should not have *sua sponte* recommended summary judgment on that basis. Accordingly, I withdraw my June 2, 2025 memorandum and recommendation, and offer this recommendation instead.

signed an offer letter from Pacific and its subsidiaries, agreeing to work as an inside sales manager in Galveston. In that role, DaPron was responsible for managing all aspects of the day-to-day activities of the inside sales and customer service team. As an inside sales manager, DaPron had access to confidential information concerning Pacific's and GSC's finances and customers. Pacific claims that on June 10, 2020, DaPron signed a Conditional Offer of Employment with terms and conditions containing non-disclosure, non-solicitation, and exit-obligation provisions. DaPron disputes that he signed this document.

On December 4, 2023, DaPron resigned from Pacific and began selling seafood under the name Seafood Isle, his own business operating out of Galveston. Prior to resigning, DaPron emailed confidential documents and compilations such as a price list, budget, sales report, and software program to his personal email address. Pacific contends these documents qualify as trade secrets that DaPron improperly used and continues to use in his competing business, violating both federal and Texas law. Pacific also alleges that after starting his competing business, DaPron continued to contact and sell seafood to Pacific's customers in breach of his employment agreement and fiduciary duties. Pacific brings claims against DaPron for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and TUTSA, breach of contract, tortious interference with prospective business relations and existing contracts, breach of fiduciary duty, and civil conspiracy.

DaPron has moved for summary judgment on all of Pacific's claims against him. Pacific has moved for partial summary judgment as to DaPron's liability on its breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and civil conspiracy claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No genuine issue of material fact exists if the summary-judgment

evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hosp. of Dall., Inc.*, 478 F.3d 255, 260 (5th Cir. 2007).

"The moving party bears the initial burden of showing that there is no genuine issue for trial." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). "[I]f the movant bears the burden of proof on an issue . . . , he must establish beyond peradventure *all* of the essential elements of the [claim or affirmative] defense to warrant judgment in his favor." *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011) (quotation omitted). Where the movant does not bear the burden of proof, his burden is satisfied by showing that the other party has a "failure of proof on an essential element of its claim [or affirmative defense]." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). A party makes this showing by introducing evidence or by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

"If the [movant] succeeds on that showing, the burden shifts to the [nonmovant] to demonstrate that there *is* a genuine issue of material fact and that the evidence favoring the [nonmovant] permits a jury verdict in the [nonmovant]'s favor." *Joseph*, 981 F.3d at 329. The parties satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "When parties file cross-motions for summary judgment, [I] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quotation omitted). "[I] must consider

3

all of the evidence in the record, but [I] do not make credibility determinations or weigh the evidence." *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004).

## ANALYSIS

### A.  BREACH OF CONTRACT CLAIM

Pacific asserts that DaPron breached certain covenants contained in his Conditional Offer of Employment. *See* Dkt. 106 at 46–49. Specifically, Pacific argues that DaPron: (1) failed to return Pacific's property after voluntarily terminating his employment; (2) disclosed and used Pacific's confidential and trade secret information; (3) solicited Pacific's customers and vendors; and (4) induced Pacific's customers and vendors to curtail or cancel their business with Pacific. In response, DaPron argues that: (1) Pacific fails to prove he signed the Conditional Offer of Employment; (2) Pacific does not have standing to assert a claim for damages or injuries sustained by GSC, a separate legal entity; and (3) the non-solicitation covenant in the employment agreement does not contain reasonable restrictions. I need to address only the first two of DaPron's arguments.

#### 1. *There Is a Genuine Dispute of Material Fact as to Whether DaPron Executed a Contract with Pacific*

"In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation modified). "The first of these elements—a valid contract—looks to the formation of the contract between the parties." *Ad-Wear & Specialty of Tex., Inc. v. Honeycomb Farms, LLC*, No. 01-18-00997, 2020 WL 1680051, at *5 (Tex. App.—Houston [1st Dist.] April 7, 2020, no pet.). A valid and binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Id.*

The parties do not dispute that there was an offer, acceptance, a meeting of the minds, and consent to accept employment. Indeed, DaPron readily acknowledges that he signed an offer letter on June 11, 2020. DaPron denies, however, that he signed the separate Conditional Offer of Employment incorporating specific employment terms and conditions. The Conditional Offer of Employment appears to reflect DaPron's electronic signature on June 10, 2020. *See* Dkt. 106 at 46. DaPron disputes the authenticity of this signature, arguing that he cannot have signed the Conditional Offer of Employment on June 10, 2020, because he didn't sign the offer letter until June 11, 2020. *See* Dkt. 107 at 69–70. In other words, DaPron argues that he cannot have signed the Conditional Offer of Employment "when [he] hadn't agreed to become an employee yet." *Id.* at 70. Construing this testimony in the light most favorable to DaPron—as I must, when considering Pacific's motion for summary judgment—means there is a genuine dispute of material fact as to whether DaPron electronically signed the Conditional Offer of Employment.

The validity and enforceability of contracts executed electronically is governed by the Texas Uniform Electronic Transactions Act. *See* Tex. Bus. & Com. Code §§ 322.001–322.021. According to that statute,

> (a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.
>
> (b) The effect of an electronic record or electronic signature attributed to a person under Subsection (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

*Id.* § 322.009. A "security procedure" is "a procedure employed for the purpose of verifying that an electronic signature, record, or performance is that of a specific person or for detecting changes or errors in the information in an electronic record." *Id.* § 322.002(13).

To show that the electronic signature is attributable to DaPron, Pacific offers a declaration by Kaylee Case, Pacific's Human Resources Manager, detailing the electronic signature process and explaining that new employees create an account and password with their email addresses to access and sign documents. *See* Dkt. 87-2 at 2. According to Case, other employees and managers cannot access the accounts or override passwords and the software Pacific uses "collects timestamps relative to when a new team member completes the onboarding documents." *Id.* at 3. DaPron retorts that "Case cannot offer testimony as to what actually happened and how the system worked in 2020" because "Case was not present at the time to witness DaPron allegedly using the UKG software." Dkt. 101 at 3. Rather, DaPron has testified that Jessica Blythe, not Case, was the Human Resources representative present when DaPron signed the offer letter. *See* Dkt. 101-1 at 15. According to DaPron, "Ms. Case did not even work for Pacific Seafood in 2020 when the Conditional Offer of Employment was purportedly executed." Dkt. 101 at 3. I construe this as an objection that Case's declaration lacks foundation.

In her declaration, Case does not identify when she began working for Pacific or whether the onboarding process that she describes was the process being utilized at the time DaPron onboarded at Pacific. Case declares that "[o]nly someone with access to kadapron@aol.com would have been able to create an account and password," but she does not explain why kadapron@aol.com is a relevant email address. Dkt. 87-2 at 2. Case declares that Pacific's onboarding software "collects timestamps relative to when a new team member completes the onboarding documents," but she offers no timestamps for when DaPron signed the Conditional Offer of Employment. *Id.* at 3. This is insufficient evidence for Pacific to carry its burden to attribute the signature to DaPron.

In *Aerotek, Inc. v. Boyd*, the Texas Supreme Court held that an employer conclusively established attribution when it provided such timestamps. *See* 624 S.W.3d 199, 201 n.4 (Tex. 2021) ("From start to finish, the record shows that the Employees each took only a few minutes to complete the hiring application. For

6

Cornett, timestamps show that he electronically signed the EDA on '11/15/16 11:29 PM' and the MAA on '11/15/16 11:56 PM'. He submitted his application for review on '11/16/16 12:15 AM'."). Merely referencing timestamps without actually providing them simply isn't enough to demonstrate the efficacy of Pacific's security procedures and attribute the June 10, 2020 electronic signature on the Conditional Offer of Employment to DaPron. Because Pacific has not shown that DaPron executed the Conditional Offer of Employment, Pacific is not entitled to summary judgment on its breach of contract claim.[2]

Even so, the fact that Pacific is not entitled to summary judgment on its breach of contract claim does not mean that DaPron *is* entitled to summary judgment. Although Pacific has not shown that it is entitled to judgment as a matter of law, it has put forth enough evidence to create a genuine dispute of material fact as to whether DaPron executed the Conditional Offer of Employment. Accordingly, DaPron is also not entitled to summary judgment on Pacific's breach of contract claim on the basis of contract validity. I must still address, however, the argument DaPron advances in his own motion for summary judgment that Pacific's breach of contract claim must fail due to Pacific's lack of monetary damages.

### 2. *Pacific Does Not Need to Prove Monetary Damages to Proceed with Its Breach of Contract Claim*

DaPron argues that Pacific's breach of contract claim must fail because Pacific has "not provided any evidence showing damage sustained by Pacific." Dkt. 108 at 15. Specifically, DaPron argues that an essential element of a breach of contract claim is proof of damages and Pacific is unable to prove any damages

---

[2] I do not reach DaPron's arguments about whether the Conditional Offer of Employment is enforceable as written. This argument was raised only in response to Pacific's motion for summary judgment, which I have already determined should be denied as to Pacific's breach of contract claim. Whether the non-solicitation provision should be reformed and whether DaPron breached the provision as reformed are issues best resolved at trial, assuming Pacific can first establish that DaPron signed the Conditional Offer of Employment.

incurred by Pacific separate from the damages incurred by GSC. Monetary damages, however, are not the only damages Pacific seeks. Pacific also requests a permanent injunction to prevent DaPron from continuing to use its confidential information and trade secrets.

"[M]oney damages are essential in contract claims seeking money damages (though not for contract claims seeking something else)." *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 n.26 (Tex. 2009). "As long as there is injury from the breach, liability attaches under Texas law; the question whether that liability gives rise to the remedy of damages or some other remedy . . . is a matter for the law of remedies." *Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 859 (E.D. Tex. 2012), *aff'd*, 550 F. App'x 897 (Fed. Cir. 2014). "A claim for breach of contract in which actual damages are not the sole objective therefore does not fail because of the plaintiff's inability to prove monetary loss and entitlement to an award of damages." *Id.* Because Pacific seeks injunctive relief, its ability (or lack thereof) to prove monetary damages is not fatal to its breach of contract claim.[3] Accordingly, DaPron's argument that Pacific cannot prove monetary damages, even if true,[4] does not entitle him to judgment as a matter of law on Pacific's breach of contract claim.

B.  **DTSA AND TUTSA MISAPPROPRIATION OF TRADE SECRETS**

"Because the definitions of 'trade secret' in the DTSA and TUTSA are functionally identical, the Court considers them together for purposes of summary judgment." *Vest Safety Med. Servs., LLC v. Arbor Env'l, LLC*, No. 4:20-cv-0812, 2022 WL 2812195, at *6 (S.D. Tex. June 17, 2022) (quotation omitted). To succeed

---

[3] Pacific could also recover nominal damages. "When a plaintiff fails to prove actual damages resulting from a breach of contract, nominal damages are available upon proof of a contract and a breach thereof." *Ctr. Equities, Inc. v. Tingley*, 106 S.W.3d 143, 154 n.7 (Tex. App.—Austin 2003, no pet.).

[4] Pacific argues that damages to its subsidiary, GSC, are necessarily damages to Pacific. Not so. "[A] corporation cannot sue to recover costs incurred by its subsidiaries." *Mobius Risk Grp. V. Global Clean Energy Holdings, Inc.*, No. 4:10-cv-1708, 2011 WL 3568074, at *4 (S.D. Tex. Aug. 15, 2011).

8

on the merits of a DTSA or TUTSA misappropriation claim, Pacific "must show that (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) [DaPron] *used* the trade secret without authorization from [Pacific]." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (quotation omitted) (addressing DTSA and TUTSA claims simultaneously). "To bring a successful" claim under either statute, Pacific must also "show that it owns a trade secret in the information it seeks to protect." *Title Source, Inc. v. HouseCanary, Inc.*, 612 S.W.3d 517, 527 (Tex. App.—San Antonio 2020, pet. denied).

Assuming Pacific is otherwise entitled to partial summary judgment on its DTSA and TUTSA claims, such judgment would extend only to liability for misappropriation of the price list, because the price list is the only undisputed trade secret for which Pacific addresses the "use" element.[5] *See* Dkt. 106 at 34–36. For his part, DaPron does not contest that the price list is a trade secret or that he misappropriated the price list when he emailed the price list to himself. Rather, DaPron argues that Pacific's motion for summary judgment should be denied because (1) his "use of [the price list] extends only to the formatting"; and (2) Pacific "made no attempt to distinguish which sales, if any, DaPron made as a result of the price list." Dkt. 107 at 32–33. As for his own motion for summary judgment, DaPron argues it should be granted as to Pacific's DTSA and TUTSA claims because Pacific fails to: (1) show that it is the owner of the trade secrets at issue; or (2) allege an injury to itself, as opposed to its subsidiary GSC.

I will assume, for the sake of argument, that DaPron *used* the price list. Even so, Pacific is not entitled to summary judgment because there is a genuine dispute

---

[5] Pacific also claims that its "customer lists, budget reports, and sales sheets are trade secrets." Dkt. 106 at 31. Although DaPron does not dispute that the budget reports and sales sheets are trade secrets, Pacific does not address the use of the budget reports and sales sheets in its motion for partial summary judgment. As for the customer list, there is a genuine dispute of material fact as to whether Pacific's customers were readily ascertainable to DaPron given that DaPron has been "working in the fish industry . . . doing distribution, sales, [and] delivery" since 2004." Dkt. 107 at 60–61.

9

of material fact as to who *owns* the price list and thus sustained damages when DaPron misappropriated it.

To prevail on its DTSA and TUTSA claims, Pacific must "prove by a preponderance of the evidence that it *owned* the alleged trade secrets." *Penthol, LLC v. Vertex Energy Operating, LLC*, 722 F. Supp. 3d 660, 678 (S.D. Tex. 2024). Under both statutes, "owner" is defined as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4); *see* Tex. Civ. Prac. & Rem. Code § 134A.002(3-a).

Pacific is wrong to assert that it is the beneficial owner of GSC's trade secrets as GSC's parent company.[6] Even so, if Pacific is able to prove that DaPron signed the Conditional Offer of Employment, that document—coupled with other evidence in the record—would create a genuine dispute of material fact as to who owns the trade secrets at issue. *See* Dkt. 106 at 47–48. Because the question of whether DaPron signed the Conditional Offer of Employment is not yet resolved, it is impossible to resolve the question of ownership of the trade secrets at issue. Thus, I recommend that both motions for summary judgment be denied as to Pacific's DTSA and TUTSA claims.

C. **TORTIOUS INTERFERENCE CLAIMS**

Pacific alleges that DaPron tortiously interfered with its existing contracts and prospective business relationships. DaPron does not dispute that he interfered with existing contracts or prospective business relationships. Rather, DaPron argues that Pacific's tortious interference claims fail because any damages resulting from his tortious interference belong to GSC and not Pacific.

---

[6] "[A] parent corporation . . . [does not] have any property interest in its subsidiary's assets." *Drilltec Techs., Inc. v. Remp*, 64 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see also Murphy v. Am. Rice, Inc.*, No. 01-03-01357, 2007 WL 766016, at *41 n.36 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("The right to sue for the subsidiary's wrongful deprivation of its property generally belongs to the subsidiary, not to its parent corporation."). "Courts that have addressed [whether a parent company may recover damages incurred by its subsidiaries] have consistently held that a parent may not do so." *Mobius Risk Grp.*, 2011 WL 3568074, at *5.

To prevail on its claim for tortious interference with a contract, Pacific must establish: "(1) the existence of a valid contract subject to interference; (2) that [DaPron] willfully and intentionally interfered with the contract; (3) that the interference proximately caused the [Pacific]'s injury; and (4) that [Pacific] incurred actual damage or loss." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). To prevail on its claim for tortious interference with prospective business relations, Pacific must prove that:

> (1) there was a reasonable probability that [Pacific] would have entered into a business relationship with a third party; (2) [DaPron] either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) [DaPron]'s conduct was independently tortious or unlawful; (4) the interference proximately caused [Pacific] injury; and (5) [Pacific] suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Both of Pacific's tortious interference claims require proof of actual damage or loss—in other words, monetary damages. *See Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990) ("The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract interfered with, to put the plaintiff in the same *economic* position he would have been in had the contract interfered with been actually performed." (emphasis added)). Pacific claims it lost $171,622.28 in 2024 from customers who left Pacific and began doing business with Seafood Isle. DaPron contends that these damages belong to GSC and not Pacific, and that because Pacific cannot show its own economic damage, its tortious interference claims must fail.

There is a genuine dispute of material fact as to whether the actual damages belong solely to GSC or were split between GSC and Pacific. *Compare* Dkt. 70-9 at 26–28 (discussing customers of GSC and Pacific), *with* Dkt. 61-8 at 7 (listing the customer's discussed in DaPron's deposition testimony as GSC's customers). Thus,

I recommend that both motions for summary judgment be denied as to Pacific's tortious interference claims.

### D. BREACH OF FIDUCIARY DUTY

Pacific claims that DaPron breached his fiduciary duty to Pacific by: (1) disclosing Pacific's confidential information and trade secrets to its competitors at Seafood Isle, (2) competing with Pacific in the same geographical market for the same customers while employed by Pacific, and (3) accepting an $80,000 business loan to start a competing business while he was still employed with Pacific. In response, DaPron argues that Pacific's claim should fail because (1) any damages caused by his breach belong to GSC and not Pacific; and (2) any fiduciary duty he had was owed to GSC and not Pacific.

To prevail on its breach of fiduciary duty claim, Pacific must show: "(1) a fiduciary relationship between [Pacific] and [DaPron], (2) a breach by [DaPron] of his fiduciary duty to [Pacific], and (3) an injury to [Pacific] or benefit to [DaPron] as a result of [DaPron]'s breach." *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied.). "An employee may prepare to go into competition with his employer—before resigning—without breaching fiduciary duties owed to that employer." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 669 (S.D. Tex. 2010). In so doing, however, "[a]n employee may not (1) appropriate the company's trade secrets; (2) solicit the former employer's customers while still working for his employer; (3) solicit the departure of other employees while still working for his employer; or (4) carry away confidential information." *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 763 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

At a minimum there are, as discussed above, "disputed fact issues as to whether [DaPron] breached his fiduciary duty to [Pacific] by misappropriating [or carrying away] confidential, proprietary, or trade secret information obtained while he was an [employee] of [Pacific] and by using that information to solicit [Pacific's] customers and compete against [Pacific]." *Rimkus Consulting*, 688 F.

Supp. 2d at 699–70. There is also a genuine dispute of material fact regarding whether Pacific is the owner of the confidential and trade secret information at issue. Thus, I recommend that both parties' motions for summary judgment on Pacific's breach of fiduciary duty claim be denied.

### E. CIVIL CONSPIRACY

Pacific argues that DaPron conspired with Pacific's customer, Jason Robert, to start a competing seafood business prior to DaPron terminating his employment with Pacific, and that in doing so, DaPron breached his fiduciary duties to Pacific.

The essential elements of a civil conspiracy claim are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). "Civil conspiracy is not an independent tort." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). "[A] civil conspiracy claim is connected to the underlying tort and survives or fails alongside it." *Id.* at 141. Because Pacific's tortious interference claims and breach of fiduciary duty claim should survive summary judgment, Pacific's civil conspiracy claim should survive as well.

## CONCLUSION

Because genuine disputes of material fact abound in this case, I recommend that both motions for summary judgment (Dkts. 61, 80) be denied.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this **29** day of July 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE